In this suit the plaintiff seeks to recover workmen's compensation for the maximum amount allowed under the law at the time of his alleged accident, Act No. 20 of 1914, for a disability arising out of a right indirect inguinal hernia which he claims to have sustained while the course and scope of his employment by the M. W. Kellogg Company, on August 19, 1947. He is suing both the employer and the employer's compensation insurance carrier, the Travelers Insurance Company of Hartford, Connecticut. He also asks for judgment in the sum of $500 or as much thereof as may be necessary for hospital, medical and drug expenses.
The M. W. Kellogg Company is a construction company and at the time plaintiff claims to have been injured, was engaged in construction work for the Standard Oil Company of New Jersey at its plant in Baton Rouge. Plaintiff was employed as a concrete foreman.
He alleges that up to the time of the injury he claims to have sustained on August 19, 1947, he was an able bodied and a physically fit worker but that since the injury which he received in an accident on that date, he has become totally and permanently disabled within the purview of the workmen's compensation law.
In describing the accident he alleges that he was standing astride a concrete firewall, about 18 inches high; that he stooped over to pick up a runway mat made of timber measuring 2 x 10 inches, 16 feet long; that when he lifted it up he felt a sharp pain in his right groin which caused him to drop the mat and when he finally straightened up he went to the time-keeper and personnel director who sent him immediately to the company's physician, Dr. D. A. Casey. He was examined by Dr. Casey and advised that he had a bad muscular sprain or rupture; that he was to go home and rest for the balance of the day which he did, and on the third day following when he attempted to resume *Page 392 
his work found that he could not continue. He telephoned Dr. Casey who then called on him and advised him that he had a hernia and needed an operation immediately. He was advised the following day by Dr. Casey that arrangements had been made for the operation within the next few days at one of the local hospitals, but he told the doctor that he was not willing to undergo any operation at that time because of the serious condition of health his wife was in.
He then alleges that Dr. Casey persisted in his being operated on and that he was equally as persistent in refusing at that moment because his wife was in the last stage of pregnancy, whereupon Dr. Casey asked him what he would do if he (Dr. Casey) would say that he had had this hernia for a year and a half.
He next alleges that Dr. Casey reported in his surgeon's report to his employer that he had injured himself while walking and his foot had slipped, and further reported that he had had this hernia for one and a half years which statements made by the said physician were absolutely false and untrue. He then alleges, in effect, that because he would not submit to an operation, he was subjected to veiled threats and coercion and that the attempt of Dr. Casey and his employer, the Kellogg Company, as well as the insurance carrier, to make it appear that he had stated that he had had this hernia for a long period before, is an effort to force him to submit to an operation which the law does not require him to do.
He alleges demand for compensation as set out in his petition and for medical and hospital expenses without avail, and prays for judgment accordingly.
The defendants filed a joint answer in which they admit plaintiff's employment by the M. W. Kellogg Company as alleged, but deny, for lack of sufficient information on which to justify a belief, those allegations of that article of his petition in which he describes the accident he alleges occurred on August 19, 1947, although they admit that he had reported that he had been involved in an accident and had been referred to Dr. Casey. They then set out that upon examination, Dr. Casey discovered that he was suffering from a hernia and advised him to rest the remainder of that day; that plaintiff stayed at home and on the following day returned to work but did not remain on the job. They further aver that later on, Dr. Casey, in the course of making his calls, visited plaintiff at his home and advised him that he should have an operation. They deny that Dr. Casey made any statement whatever about reporting that he would say that the hernia was one of long standing but that plaintiff himself told Dr. Casey that the hernia had developed more than a year prior to that date. They aver further that the report made by Dr. Casey contained the direct statements made by the plaintiff to him.
Further answering, the defendants allege that on or about August 19, 1947, plaintiff reported to Dr. Casey, complaining of a sprain of his right side and back and that in the course of his examination, the doctor discovered a right inguinal hernia. That plaintiff returned to his home and remained there the rest of the day and on the following day returned to work; that he again returned to his home that day whereupon Dr. Casey advised the defendant, Travelers Insurance Company, that plaintiff was suffering from an old hernia and asked if an operation was desired; that the insurance company, although in no way responsible for the old hernia reported by the doctor, authorized the operation for fear that plaintiff would later sustain a strangulation of the hernia. That through the course of the conversation with plaintiff, when Dr. Casey advised that he should have the operation, plaintiff stated that he had been suffering with the hernia for one and a half years and stated further that the family desired that he should have the operation in Texas and asked if it could be delayed until he could go there. That on August 22, 1947, plaintiff visited the representative of the insurance company who advised him that the company would pay the costs of the operation and pay him compensation during the period of his disability. That during the course of this conversation he stated to the representative of this insurance company that *Page 393 
he desired to have the operation at the home of his family in Texas, all of which was agreeable to the insurance company. That plaintiff then asked for a cash advance to pay some obligations he owed, before leaving for Texas, whereupon the insurance agent advised him that he would have to take that request up with his superior in New Orleans, which he would do and give plaintiff a reply on his return to Baton Rouge on the following Monday. Before he could do that, however, plaintiff employed the attorney who is presently prosecuting this case, who called the representative of the insurance company, stating that plaintiff would not submit to an operation but would accept a cash settlement. The representative of the insurance company refused to make a cash advance or to pay the amount demanded in the settlement because from the information available, the defendant was not responsible or liable to plaintiff in any way.
On the issues as thus made up by the pleadings, the case was tried in the district court and resulted in a judgment in favor of the defendants, rejecting plaintiff's demand and dismissing his suit. The trial judge expressed his conclusions in a very few lines stating that he was not satisfied from the evidence that plaintiff, while in the employ of the Kellogg Company and while performing any duty for that employer, experienced an accident wherein he sustained an injury. He stated that there is no doubt but that plaintiff suffers from a hernia, but that the preponderance of the evidence is to the effect that plaintiff had this hernia before he was employed by the defendant. With regard to proof of an accident, he stated that the courts have held that the statement of a plaintiff will suffice to prove an accident, provided the surrounding circumstances tend to corroborate his statement. In this case, aside from the complaint made by the plaintiff at the time of the alleged accident, he found no convincing circumstances tending toward corroboration. From the judgment rendered, the plaintiff has taken this appeal.
We are confronted in this case with two propositions, either of which is determinative of the issue that is presented to the court. The first is whether or not plaintiff has sufficiently proven an accident, while in the course and scope of his employment by the defendant, Kellogg Company, which produced the injury he complains of. In connection with this proposition, it may be well to state also that it may involve the question of an aggravation of the injury complained of since counsel for plaintiff rather strenuously argues that point. The second proposition is whether or not the hernia which plaintiff admittedly is suffering from, was one sustained by him prior to the time of his employment by the Kellogg Company.
Although on the first proposition the trial judge was of the opinion that plaintiff had not sufficiently proven an accident, we believe that to the extent that the witness, Joe Higgins, who was employed with him on the job, testified that he saw plaintiff handling the runway mat and heard him say that he had hurt himself while handling it, and was given a slip to go to the doctor, that there is some proof, in addition to his testimony that something unusual may have occurred and, giving him the benefit of the doubt, it may be that he has shown that an accident of some kind took place. We are of the opinion, however, that the injury he sustained at the moment, if any, was the one he reported to Dr. Casey concerning pain in his right hip and right side and had no connection with the hernia he is suffering from.
It is important to note that plaintiff, besides alleging that he was an able bodied and a physically fit worker, not only testified to that fact himself but seemed to have stressed that point in his proof by producing witnesses to state that they also knew him to be a hard working individual who, although being a foreman on the job, very frequently did hard labor himself. The object of all this proof, no doubt, was to bring out the point that before August 19, 1947, plaintiff was able to do hard work and unable to do any of it after that date. In connection with this question it is to be noted also that the Kellogg Company did not require a pre-employment examination of the men hired by it and there is no record of whether plaintiff *Page 394 
was suffering from a hernia or not at the time he was employed. The lack of such pre-employment examination is not a reflection on this employer, as it seems, from the testimony, that the unions, or at least the one covering its employees, did not permit such examinations.
As stated, the point about plaintiff's physical ability prior to the date of his alleged accident, as compared to his physical condition afterwards, is strongly stressed but it is shown by the record in this case, that there were at least four or five men employed on this very job who were working while suffering with hernias and we believe that it is a matter of common knowledge that many men do heavy work even under such physical handicaps. It is certainly not a good thing for them to do, but nevertheless, they do it. Therefore, we are not so strongly impressed with that point in this case and believe rather that the vital question is whether or not the proof is sufficient to show that plaintiff had a hernia before he was employed by the defendant employer.
That point presents a question of fact on which the trial judge concluded, from the evidence in the record, that he did have such a hernia. He did not comment on the testimony but we are sure that he based his conclusion on that of the several witnesses who testified that the plaintiff himself had told them that he had sustained a hernia before, when he was in Texas. Of course, plaintiff contradicts the testimony of all of these witnesses and attempts to have the court believe that they so testified because all of them have some sort of grievance or prejudice against him.
The most important testimony on this point is that of Dr. Casey. Whilst Dr. Casey is referred to by the plaintiff as the company's physician, meaning the defendant's doctor, the proof is also to the effect that Dr. Casey was the plaintiff's own personal family physician also. He not only treated the plaintiff himself but he also attended plaintiff's wife during her pregnancy and delivered her of a baby after the alleged accident took place and even after all this controversy over an operation with which plaintiff tries to impress the court, had taken place. There is no motive we can think of which would have prompted Dr. Casey to go to the extent plaintiff says he did to insist that he be operated on. No doubt he suggested and advised that on account of the seriousness of his hernia, plaintiff should have the operation. This however is exactly the same recommendation that was made to him by Dr. J. E. Lawton, Dr. John T. Lewis, and Dr. Jeff McHugh, all of whom plaintiff consulted after Dr. Casey had seen him.
In his petition plaintiff made a statement which, in our opinion, reflects very seriously against Dr. Casey's professional integrity when he alleged that the doctor, with a view of coercing him into an operation, asked him what he would say if he, Dr. Casey, would testify that the plaintiff had had this hernia for one and a half years. In his testimony, plaintiff does not go that far and whilst he still insists that Dr. Casey seemed to have it in for him because he did not take the operation, we still don't understand what would prompt any doctor to act in that manner. Dr. Casey seems to be a reputable physician, in good standing, in the City of Baton Rouge. He frankly states that he was examining plaintiff for a pain he was complaining of in his side and it was in that examination that he discovered that he had a hernia. He states that plaintiff seemed to have had some reluctance to lower his trousers and that, no doubt, created a suspicion in Dr. Casey's mind about a hernia. It is to be noted that plaintiff does not deny this but explains it by saying that he was wearing his boots and that made it difficult for him to lower the trousers. In the absence of a more reasonable explanation, that incident is a circumstance which corroborates in some measure, Dr. Casey's statement that it was the plaintiff himself who told him that he had had this hernia for one and a half years.
Four other witnesses testified that plaintiff had made a similar statement to them about having this hernia prior to his employment by the Kellogg Company. Three of these witnesses are still connected with the Kellogg Company and to that extent *Page 395 
it is urged, on behalf of the plaintiff, that they were interested in having testified that way. The fourth of these witnesses is a man by the name of Thomas F. Black who no longer has any connection with plaintiff's former employer and who is a man seventy years of age. Plaintiff would have the court believe that Black was prejudiced against him because he owed him some money and Black had attempted to garnish his wages. It is not disputed that the plaintiff owed Black and no doubt Black was attempting to collect from him. There even was a threat at a garnishment during their employment by the Kellogg Company which was discouraged by the company. Nothing further was done about it and Black seems to have relied, up to now, on plaintiff's promise to pay. If anything, it would seem that Black, if he was trying to get his debt paid, would testify in a manner that would help plaintiff in this litigation rather than telling what definitely impresses us as being the truth.
On this controlling point in the case, in addition to the testimony which we have so far analyzed, we find this part of plaintiff's own testimony strongly significant. On being questioned by the court regarding the testimony of these various witnesses, he was asked if in his opinion they had gotten the information on which they based their testimony from Dr. Casey. This is what he answered: "If they didn't, I (don't) know where they got it. I won't say I did have a hernia, or I didn't. If I did have a hernia, I didn't know it." We construe this statement as very near an admission on his part that he did have the hernia prior to his employment. In other words, he doesn't specifically admit it, but he doesn't deny it. His testimony gives weight to the testimony of the various witnesses who said he had told them about a hernia and strengthens the conclusion reached by the trial judge with which we agree.
The qualified part of the quoted statement by plaintiff, to the effect that if he did have a hernia, he did not know it, might in a way, provoke the thought of an aggravation of injury. We are convinced however that since he does not deny that he had the hernia and since the testimony is so strong otherwise, we cannot make this out to be a case of an aggravation. It has been held by the courts that a hernia is a disabling condition, no matter in what stage it is found at the time of the complaint. In this case, however, the proof that it existed prior to his employment by the Kellogg Company and that it was such a dangerous condition at the time he was examined by the several doctors who testified, leads to the conclusion that it was a fully developed and disabling hernia before, and consequently there is no ground on which a claim of an aggravation of an existing dormant condition can be entertained.
The judgment appealed from is affirmed at the costs of the plaintiff, appellant herein.